BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD
600 West Broadway, Suite 900
San Diego, CA 92101
sbasser@barrack.com
sward@barrack.com
Telephone: (619) 230-0800

Lead Counsel for the Class and Counsel for Lead Plaintiff, the Policemen's Annuity and Benefit Fund of Chicago and the Class

BONNETT, FAIRBOURN,
   FRIEDMAN & BALINT, P.C.
WILLIAM G. FAIRBOURN
FRANCIS J. BALINT, JR.
2901 North Central Avenue,
Suite 1000
Phoenix, AZ 85012 .
Telephone: (602) 274-1100

Local Counsel

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| In re APOLLO GROUP, INC. SECURITIES LITIGATION<br><br>This Document relates to:<br><br>ALL ACTIONS. | Lead Case No.  CV 04-2147-PHX-JAT<br><br>CLASS ACTION<br><br>**REPLY IN SUPPORT OF APPLICATION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

**TABLE OF CONTENTS**

I.   The Fee Request is Fair and Reasonable ............................................................................1

    A.   The Lack of Significant Objections to the Fee Request Supports its Approval ............................................................................................................1

    B.   The Percentage of Fund Methodology is Appropriate Here ................................1

    C.   NASI Ignores the History of the Litigation ............................................................3

    D.   NASI's Objection Ignores Factors Recognized and Followed by the Ninth Circuit that Support the Requested Award ........................................................4

    E.   NASI's Specific Objections Relating to the Optional Lodestar Cross-Check Should be Rejected ...................................................................................6

        1.   The Lodestar Cross-Check is Optional ......................................................6

        2.   Class Counsels' Use of Current Billing Rates Is Appropriate ..................8

        3.   Class Counsel's Inclusion of Contract Attorneys' Hourly Rates is Appropriate and Supported by Case Law ..................................................9

II.   CONCLUSION ........................................................................................................11

**Cases**

*Andrews v. Lawrence Livermore Nat'l Sec., LLC*,
  2012 U.S. Dist. LEXIS 5571 (N.D. Cal. Jan. 18, 2012) ................................................. 10

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
  643 F.3d 1165 (9th Cir. 2010) ......................................................................................... 3

*Bellows v. NCO Fin. Sys.*,
  2009 U.S. Dist. LEXIS 297 (S.D. Cal. Jan. 5, 2009) ....................................................... 8

*Blum v. Stenson*,
  465 U.S. 886 (1984) ......................................................................................................... 3

*Bobol v. HP Pavilion Mgmt.*,
  2006 U.S. Dist. LEXIS 21125 (N.D. Cal. Apr. 10, 2006) ............................................... 8

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008) ........................................................................................... 8

*Camden I Condominium Ass'n v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) ......................................................................................... 3

*Carlson v. Xerox Corp.*,
  596 F. Supp. 2d 400 (D. Conn. 2009) ............................................................................ 10

*Communications Workers of America Plan for Employees' Pensions and Death Benefits, et al., v. CSK Auto Corp., et al.*,
  No. CV-06-1503-PHX-DGC (D. Ariz. July 1, 2008) ..................................................... 2

*Craft v. County of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) .......................................................................... 6

*Garner v. State Farm Mut. Auto. Ins. Co.,*
  2010 U.S. Dist. LEXIS 49482 (N.D. Cal. Apr. 22, 2010) ............................................... 1

*Hanley v. Warburg Pincus Capital Company, L.P., et al.,*
  No. CV-96-390-TUC-FRZ (D. Ariz. Apr. 25, 2006) ....................................................... 2

*In re AOL Time Warner S'holder Deriv. Litig.*,
  2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Feb. 1, 2010) ......................................... 9, 10

*In re Chiron Corp. Sec. Litig.*,
  2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) ..................................................... 5, 7, 11

*In re Crazy Eddie Sec. Litig.*,
  824 F. Supp. 320 (E.D.N.Y. 1993) .................................................................................. 1

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008) .............................................................. 7, 10, 11

*In re Heritage Bond Litig.*,
  2005 U.S. Dist. LEXIS 13627 (C.D. Cal. June 10, 2005) ................................................1

*In re Medicis Pharm. Corp. Secs. Litig.*,
  No. 08-cv-01821-GMS (Feb. 27, 2012) ........................................................................4

*In re Pac. Enter. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...........................................................................................5

*In re Puerto Rican Cabotage Antitrust, Inc.*,
  2011 U.S. Dist. LEXIS 113980 (D.P.R. Sept. 13, 2011)................................................7

*In re Rite Aid Corp. Sec Litig.*,
  396 F.3d 294 (3d Cir. 2005) ......................................................................................7, 11

*In re The Mills Corp. Secs. Litig.*,
  265 F.R.D. 246 (E.D. Va. 2009) ..................................................................................10

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995)............................................................................................3

*In re Tyco Int'l, Ltd.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)........................................................................10, 11

*In re Vioxx Prods. Liab. Litig.*,
  760 F. Supp. 2d 640 (E.D. La. 2010).............................................................................3

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994).....................................................................................6, 9

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ..........................................................................3

*Lanni v. NJ*,
  259 F.3d 146 (3rd Cir. 2001) .........................................................................................9

*Missouri v. Jenkins*,
  491 U.S. 274 (1989).......................................................................................................8

*Morris v. Lifescan, Inc.*,
  2003 U.S. App. LEXIS 820 (9th Cir. 2003) .................................................................5

*Morris v. Potter*,
  2008 U.S. Dist. LEXIS 105409 (D. Colo. Dec. 22, 2008) ..........................................10

*New England Carpenters v. First Databank*,
  2009 U.S. Dist. LEXIS 97364 (D. Mass. Oct. 29, 2009). ............................................7

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .........................................................................................1

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
  478 U.S. 546 (1986).......................................................................................................8

*Perdue v. Kenny A. ex rel Winn*,
   130 S. Ct. 1662 (2010) .................................................................................... 2, 3, 8

*Rode v. Dellarciprete*,
   892 F.2d 1177 (3rd Cir. 1990) ................................................................................ 9

*Rudebusch v. Arizona*,
   2007 WL 2774482 (D. Az. Sept. 21, 2007) ............................................................ 8

*Six Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ............................................................................ 2, 5

*Staton v. Boeing Co.*,
   327 F. 3d 938 (9th Cir. 2003) ................................................................................. 6

*Swedish Hosp. Corp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) .................................................................................. 3

*Takeda Chem. Indus. v. Mylan Labs., Inc.*,
   2007 U.S. Dist. LEXIS 19614 (S.D.N.Y. Mar. 21, 2007) ..................................... 10

*Thieriot v. Celtic Ins. Co.*,
   2011 U.S. Dist. LEXIS 44852 (N.D. Cal. Apr. 21, 2011) ....................................... 7

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-02204-FJM (D. Ariz. Feb. 18, 2010) ................................................ 2, 4

*UFCW Local 880 v. Newmont Mining Corp., et al.*,
   No. 05-cv-01046-MSK-RNB (D. Colo. Sept. 30, 2008) ......................................... 5

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................................ 4, 5

*Weinberger v. Great N. Nekoosa Corp.*,
   925 F.2d 518 (1st Cir. 1991) ................................................................................... 8

*White v. Experian Info. Solutions, Inc.*,
   2011 U.S. Dist LEXIS 79038 (C.D. Cal. July 15, 2011) ........................................ 6

*Wood v. Ionatron, Inc., et al.*,
   No. CV-06-354-TUC-CKJ (D. Ariz. Sept. 28, 2009) .............................................. 2

*Young v. Polo Retail, LLC*,
   2007 U.S. Dist. LEXIS 27269 (N.D. Cal. Mar. 28, 2007) ....................................... 7

**Private Securities Litigation Reform Act of 1995**

15 U.S.C. § 78u-4(a)(6) ................................................................................................ 3, 5

Lead Plaintiff, the Policemen's Annuity and Benefit Fund of Chicago, submits this memorandum in further support of the Petition for Award of Attorneys' Fees and Reimbursement of Expenses (the "Fee Brief").[1] Dkt. No. 740.

## I. The Fee Request is Fair and Reasonable

### A. The Lack of Significant Objections to the Fee Request Supports its Approval

The fact that just one objection to the petition for fees and expenses has been made after issuance of over 166,000 notices is a powerful indication that the fee and expense request is quite reasonable. "[A] single objection out of a sizeable class, after notice, . . . demonstrates the reasonableness and fairness of Class Counsels' request" for fees. *Garner v. State Farm Mut. Auto. Ins. Co.,* No. 08-CV-1365-CW, 2010 U.S. Dist. LEXIS 49482, *5-6 (N.D. Cal. Apr. 22, 2010) (awarding fees of 30% of the common fund). *See also, In re Heritage Bond Litig.*, No. 02-ml-1457-DT, 2005 U.S. Dist. LEXIS 13627, *49-50 (C.D. Cal. June 10, 2005) ("lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund."); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 327 (E.D.N.Y. 1993) (awarding fees of 33.8%, equaling a lodestar multiple of 1.72, rejecting the objection of "One purported class member . . . . [and noting that] class counsel's proposed multiplier of 1.72 is readily justified . . . 'in recent years multipliers of between 3 and 4.5 have been common'").

### B. The Percentage of Fund Methodology is Appropriate Here

The Ninth Circuit has consistently approved use of the percentage of fund method in common fund cases, including those brought under the securities laws and the PSLRA. *See, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); Fee Brief at 4-5, and it has set a benchmark of 25% for the merely ordinary case.[2]

---

[1] Unless defined otherwise, all capitalized terms have the same meaning as set forth in the Motion for Final Approval of Stipulation and Agreement and the Fee Brief.

[2] *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).

1

Thus, percentage method is the appropriate method in the Ninth Circuit, and contrary to the assertions of the sole objector, National Automatic Sprinkler Industry Pension Fund and Sprinkler Industry Supplemental Pension Fund ("NASI"), requires no showing of special circumstances. And the courts in this District have followed the Ninth Circuit's direction and regularly employ the percentage of fund method in common fund fee awards. *See, e.g., Wood v. Ionatron, Inc., et al.,* No. CV-06-354-TUC-CKJ, Dkt. No. 159 (D. Ariz. Sept. 28, 2009) (awarding fees of 30% of common fund); *Communications Workers of America Plan for Employees' Pensions and Death Benefits, et al., v. CSK Auto Corp., et al.,* No. CV-06-1503-PHX-DGC, Dkt. No. 171 (D. Ariz. July 1, 2008) (awarding percentage of fund based fees); *Hanley v. Warburg Pincus Capital Company, L.P., et al.,* No. CV-96-390-TUC-FRZ, Dkt. No. 244 (D. Ariz. Apr. 25, 2006) (same); *Tsirekidze v. Syntax-Brillian Corp.,* No. CV-07-02204-FJM, Dkt No. 381 (D. Ariz. Feb. 18, 2010) (same).

NASI's brief is quite inconsistent, acknowledging that the Ninth Circuit permits fee awards in common fund cases to be based on the percentage method (Dkt. No. 750 at 1, 4), but suggesting elsewhere that the Supreme Court's recent decision in *Perdue v. Kenny A. ex rel Winn*, 130 S. Ct. 1662 (2010), addressing fees in a prevailing party/statutory fee-shifting case, somehow reverses all those cases and requires a lodestar analysis in every case. Dkt. No. 750 at 2-8. Law in the Ninth Circuit (and elsewhere) makes clear that fee awards paid out of a common fund are calculated quite differently than fee-shifting awards paid by defendants on top of damages, and the two bodies of law cannot be intermingled as NASI has. Thus the Ninth Circuit has held that, while statutory awards of attorneys' fees "are subject to 'lodestar' calculation procedures, ***a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery***."[3] *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The Supreme Court has said the same thing. *Blum v.*

---

[3] Emphasis added throughout unless otherwise noted.

1  *Stenson*, 465 U.S. 886, 900 n.16 (1984).  Indeed, several Circuits hold that the percentage method is ***mandatory*** in common fund cases.[4]  Nothing in *Perdue* changes that principle.[5]

While use of the percentage method pre-dated the PSLRA, the language of that 1995 statute confirms the correctness of paying counsel a ***reasonable percentage*** of the recovery, rather than a lodestar-based fee, requiring that fees should not "exceed ***a reasonable percentage*** of the amount of any damages . . . actually paid to the class."  15 U.S.C. § 78u-4(a)(6).

The request for 33.33% of this fund is thus consistent with Ninth Circuit jurisprudence, common practice in this District and the PSLRA.  And, as set forth below, the requested fee was well-earned, reflecting a superb result achieved after many years of hard work by Class Counsel.

### C. NASI Ignores the History of the Litigation

Despite tacitly acknowledging that the Agreement is an excellent result by failing to object to it, NASI raises broad objections to the fee request that ignore the detailed briefing on the unique nature of this action, its procedural history and counsels' efforts on behalf of the Class.  *See* Dkt. No. 740 at 1-4, 9-17 and Dkt. No. 741 at ¶9-119.

While noting that a fee determination should "reference [] the specific facts of the case," NASI ignores those very facts.  Dkt. No. 750 at 7.  Specifically, NASI, which

---

[4]  *See, Camden I Condominium Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1267 (D.C. Cir. 1993).

[5]  *See Antoninetti v. Chipotle Mexican Grill, Inc.*, 643 F.3d 1165, 1176 (9th Cir. 2010) (noting *Perdue's* application to fee-shifting); *In re Vioxx Prods. Liab. Litig.*, 760 F. Supp. 2d 640, 661 (E.D. La. 2010) ("*Perdue* has little bearing on the use of the lodestar as a cross-check of a . . . fee awarded as a percentage of a common fund"); *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) (objector's reliance on *Perdue* "misplaced" because *Perdue* did not involve a common fund).

often files objections to fee requests,[6] fails to mention that this action entailed: substantial dismissal motion practice; a class certification process; voluminous discovery involving more than fifty depositions and the review of almost a million pages of documents; the submission of four expert reports on the plaintiff's side, five expert reports on the defendants' side, and depositions of those experts; lengthy and detailed motions for summary judgment; twenty-four *in limine* motions and extensive pretrial preparation, including submission of detailed jury instructions, special verdict forms and extensive exhibit lists; trial from November 2007 to January 2008, through which Class Counsel achieved a verdict in the full amount sought on a per share basis; the vacating of that verdict for the Class, as a result of which the Class stood to recover ***nothing***; and a lengthy and ultimately successful appeal which, following the United States Supreme Court's denial of *certiorari*, resulted in a judgment for the Class. *See* Dkt. No. 750 at 5; *see also* Dkt. No. 741 at ¶¶ 9-119. These facts support the 33.33% fee.

### D. NASI's Objection Ignores Factors Recognized and Followed by the Ninth Circuit that Support the Requested Award

The Ninth Circuit uses several factors to determine the reasonableness of fees in cases of this nature, including (1) the result achieved; (2) awards made in similar actions; (3) risks posed by continued litigation; (4) skill and quality of work required and demonstrated; (5) the financial burden carried by counsel and the contingent nature of the fee; (6) reaction of the class to the fee and expense request; and (7) whether the percentage appears reasonable in light of a lodestar cross-check. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-50 (9th Cir. 2002); Fee Brief at 4-5.[7] NASI

---

[6] Declaration of Samuel M. Ward ("Ward Decl.") at ¶ 8.

[7] *See also Syntax-Brillian,* No. CV-07-02204-FJM, Dkt. No. 381. *In re Medicis Pharm. Corp. Secs. Litig.*, No. 08-cv-01821-GMS, Dkt. No. 159 (D. Ariz. Feb. 27, 2012) (awarding percentage of fund based fees following counsel's briefing on the factors set forth in *Vizcaino* (Dkt. No. 150 at 5-18)).


addresses none of these factors, though the Fee Brief addressed them in detail. Fee Brief at 5-20, Basser Decl. at ¶¶9-119.

"[E]xceptional results, complexity of the issues, and risk are relevant circumstances" supporting an "upward departure" from the Ninth Circuit benchmark. *Morris v. Lifescan, Inc.*, No. 02-15765, 2003 U.S. App. LEXIS 820, *4 (9th Cir. 2003), citing *Vizcaino*, 290 F.3d at 1048. *See also, In re Pac. Enter. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (same). That is what we have here, but again, NASI is silent as to these factors even while inaccurately asserting that the fee petition is made "[w]ithout reference to the specific facts of the case." Dkt. No. 750 at 7.

NASI contends that reference to "awards made in other cases" is inappropriate. Dkt. No. 750 at 6-8. Controlling authority holds otherwise. *See Vizcaino*, 290 F.3d at 1050 (it is "appropriate to examine lawyers' reasonable expectations … based on the circumstances of the case and the range of fee awards out of common funds of comparable size"). *See also, Six Mexican Workers*, 904 F.2d at 1311.[8]

As addressed in more detail in § E, the cases on which NASI relies are so different from this one that it is NASI, not Class Counsel, which has failed to consider the "specific facts of the case." Dkt. No. 750 at 7. NASI relies on Judge Walker's opinion in *In re Chiron Corp. Sec. Litig.*, No. C-04-4293-VRW, 2007 WL 4249902 (N.D. Cal. Nov. 30, 2007), but *Chiron* settled prior to a ruling on defendants' motion to dismiss the complaint and no discovery was taken. Thus in *Chiron*, the Ninth Circuit benchmark would have resulted in a "multiplier of 8.34" for a quick settlement, which was rejected. *Id.* at *1-2, *6 and *16.[9] This case is at the opposite end of the spectrum, and Class Counsel have more than earned the requested fee.[10]

---

[8] Contrary to NASI's assertion, the PSLRA does not "reject determination of fees by reference to a 'benchmark.'" Objection at 6 n. 4. The PSLRA ***requires*** that fee awards reflect "a reasonable ***percentage*** " of damages…." 15 U.S.C. § 78u-4(a)(6).

[9] NASI's reliance on *UFCW Local 880 v. Newmont Mining Corp., et al.*, No. 05-cv-01046-MSK-RNB (D. Colo.) is similarly misplaced. In *UFCW*, the parties reached a settlement agreement ***four months*** after the consolidated complaint was filed, before defendants' motion to dismiss was fully briefed and before the court had even

### E. NASI's Specific Objections Relating to the Optional Lodestar Cross-Check Should be Rejected

NASI's objection to Lead Counsel's calculation of the optional lodestar cross-check boils down to contentions that (a) counsel uses current billing rates, and (b) counsel is charging market rates for work performed by "contract attorneys." *See* Dkt. No. 750 at 9-14. Both contentions run contrary to case law and common practice in complex class actions, but more importantly, fail to recognize that a lodestar cross-check is a purely optional means to double check the reasonableness of a percentage based fee.

#### 1. The Lodestar Cross-Check is Optional

NASI implies that the lodestar cross-check is required in determining a reasonable fee, but this is not so. "A lodestar cross-check is not required in this circuit." *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008); *White v. Experian Info. Solutions, Inc.*, No. SACV-05-1070-DOC, 2011 U.S. Dist LEXIS 79038, *10 (C.D. Cal. July 15, 2011) ("courts *may* use the lodestar method as a cross-check. . .").[11] If used, the optional "lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Sec Litig.,* 396 F.3d

---

considered the merits of the action. 2008 U.S. Dist. LEXIS 87842, *4-5 (D. Colo. Sept. 30, 2008).

[10] NASI is doubly wrong when it contends "[t]here is no statutory or public policy basis for courts to be more lubricious [sic] in approving class action securities fees than civil rights fees . . . ." Dkt. No. 750 at 14 n. 9. The difference is not between securities and civil rights, but between common funds (where the client pays the fee) and statutory fee shifting (where the adversary pays the fee). The courts have made clear that: a) common fund fees can be awarded on a percentage basis, while statutory fees cannot; and b) common fund fees can include a substantial multiplier, often 3 or higher, while multipliers are rare and limited in statutory fee shifting cases. Thus in *Staton v. Boeing Co.*, the Ninth Circuit held that when the court applies the lodestar method in a common fund case, unlike in a fee-shifting case, "the court *can apply a risk multiplier* when using the lodestar approach." 327 F. 3d 938, 967 (9th Cir. 2003) *See also, In re Washington Pub. Power Supply Sys. Sec. Litig. ("WPPSS")*, 19 F.3d 1291, 1299 (9th Cir. 1994), ("rationale for barring risk multipliers in statutory fee cases does not… bar risk multipliers in common fund cases").

[11] *See also, Rankin v. Am. Greetings, Inc.*, No. 10-CV-1831-GGH, 2011 U.S. Dist LEXIS 72250, *3 (E.D. Cal. July 6, 2011) (same)*; HCL Partners Ltd. P'ship v. Leap Wireless Int'l. Inc.*, No. 07-CV-2245-MMA, 2010 U.S. Dist. LEXIS 109829 at *2 (S.D. Cal. Oct. 15, 2010) (same).

294, 306 (3d Cir. 2005). *See also, Young v. Polo Retail, LLC,* No. C–02–4546 VRW, 2007 U.S. Dist. LEXIS 27269 at *15 (N.D. Cal. Mar. 28, 2007) (same); *Thieriot v. Celtic Ins. Co.*, No. 10-CV-4462-LB, 2011 U.S. Dist. LEXIS 44852 (N.D. Cal. Apr. 21, 2011) (same, awarding fee of 33% of the common fund). To that end "the Court may rely on summaries of hours submitted by counsel and not review actual billing records." *In re Puerto Rican Cabotage Antitrust, Inc.*, No. 08-md-1960-DRD, 2011 U.S. Dist. LEXIS 113980 at *51 n.18 (D.P.R. Sept. 13, 2011).[12] In fact, in each of the District of Arizona cases cited above at pg. 2, the courts awarded percentage based fees after conducting an optional lodestar cross-check using summary information identical to that provided to the court here. Moreover, in each of those actions, the court also awarded reimbursement of expenses based on summary categorizations like those submitted here. As we said above in distinguishing *Chiron*, when a case goes to jury trial and appeal, and is settled handsomely, there is no great need to double check whether counsel has earned their percentage fee, which generates a modest implied multiplier. When the lodestar is used as a cross-check, neither the detailed information NASI demands nor the second-guessing of counsel's methodology or use of personnel is appropriate.

NASI argues that the lodestar cross-check information provided by counsel is inadequate, but nearly every case they rely on is either a statutory fee-shifting case, in which lodestar is the ***only*** acceptable method, or a case where, for lack of a common

---

[12] NASI asks the Court to refer the fee determination to a special master. Dkt. No. 750 at 12-13. But that is a lengthy, complex and wasteful process. Previously, in response to another of the numerous objections to fee awards filed by NASI, the court rejected NASI's demand for a special master as being "cumbersome, time-consuming and resource intensive" and inconsistent with the "percentage of the fund . . . methodology… with a lodestar calculation as a pragmatic cross-check." *New England Carpenters v. First Databank*, No. 05-CV-11148-PBS, 2009 U.S. Dist. LEXIS 97364, *7 (D. Mass. Oct. 29, 2009). *See also, In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, 586 F. Supp. 2d 732, 811 (S.D. Tex. 2008) (denying objector's request for appointment of a special master because "the Court's personal oversight of all aspects of this case provides a strong basis for evaluating counsel's fee request."). In light of this Court's close and careful management and administration of jurisprudence of this action for many years, NASI's request should also be rejected here. In addition, the issues of current rates and contract attorneys are purely legal issues for the Court to decide.

fund or other reasons, counsel explicitly sought the fees based exclusively on lodestar. For example, in *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 526 (1st Cir. 1991) (Dkt. No. 750 at 4 n. 2), the court held that in "the absence of any true common fund [here] . . . we cannot fault the district court's implied premise that the lodestar is the soundest available alternative" to the percentage method.[13] *Rudebusch v. Arizona*, No. 95-CV-1313-PCT, 2007 WL 2774482 (D. Az. Sept. 21, 2007) (Dkt. No. 750 at 9-10), was a statutory fee shifting case where counsel properly sought attorneys' fees *solely* on the basis of a lodestar calculation. *See Rudebusch*, No. 95-CV-01313-RCB, Dkt. No. 337 at 6. As noted above, the Supreme Court's decision in *Perdue* (awarding fees under 42 U.S.C. §1988) is similar, as is *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980, 978 (9th Cir. 2008) (awarding fees pursuant to 15 U.S.C. § 1692), and *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 (1986) (awarding fees under the Clean Air Act).

### 2. Class Counsels' Use of Current Billing Rates Is Appropriate

NASI's argument that Class Counsel cannot use current billing rates to account for the time value of money is simply inconsistent with the case law.[14] Dkt. No. 750 at 9-14. Use of current rates by Barrack Rodos & Bacine ("BR&B") and Bonnett Fairbourn Friedman and Balint ("BFFB") is consistent with Supreme Court jurisprudence expressly holding that using *current rates* in lodestar calculations appropriately compensates counsel for inflation and loss of use of funds. *Missouri v. Jenkins*, 491 U.S. 274, 283-284 (1989).[15] The Ninth Circuit holds likewise. *WPPSS*, 19

---

[13]   *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 n. 10 (8th Cir. 1996) (distinguishing *Weinberger* as "inapposite to the 'common fund' . . . in this case").

[14]   NASI asserts that "regardless of when billed," Class Counsel uses "current billable rate." Dkt. No. 750 at 5 n.3. This is not true. Class Counsel uses current billing rates for attorneys currently practicing with the firm, while for attorneys no longer practicing with the firm, rates are capped at the hourly rates charged prior to their departure. *See* Exhibit C to Dkt No. 751.

[15]   *See also, Bellows v. NCO Fin. Sys.*, No. 07-cv-1413W, 2009 U.S. Dist. LEXIS 297, *10 (S.D. Cal. Jan. 5, 2009) (same); *Bobol v. HP Pavilion Mgmt.*, No. 04-cv-00082-JW, 2006 U.S. Dist. LEXIS 21125, *8 n. 3 (N.D. Cal. Apr. 10, 2006) (same);

F.3d at 1305 ("use of current rates for attorneys still at the firm was not improper"). And while NASI relies on *WPPSS* to argue that Class Counsel is trying to "double dip", in *WPPSS* the Ninth Circuit expressly contemplated the use of lodestar "risk" multipliers on hourly rates already adjusted to reflect a delay in payment. *Id.* at 1300-01.

Use of current billing rates is also proper and reasonable in light of continued growth in legal fees. As the court noted in *In re AOL Time Warner S'holder Deriv. Litig.*, No. 02-CV-6302-CM, 2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Feb. 1, 2010):

> Billing rates across the country have increased since settlement was reached in 2006. … annual hourly fee increases of $ 25 to $ 50 at the top levels have been common throughout the past decade…. [and] [t]he *National Law Journal* has reported annual average increases as high as 7.7 percent during the period. At the end of last year, at least one lawyer's billing rate had soared to $ 1,260 per hour, while at least four other firms broke the $ 1,000 barrier.

*Id.* at *59-60, citations omitted. Here, the rates used by Class Counsel in the optional lodestar cross-check are consistent with rates used by other firms practicing complex securities litigation and have been approved by other courts. Fee Brief at 19 n.6.

### 3. Class Counsel's Inclusion of Contract Attorneys' Hourly Rates is Appropriate and Supported by Case Law

Class Counsel carried this case without compensation for seven years. In doing so, Class Counsel used some of its most experienced lawyers, its regularly employed associates and also utilized what are sometimes called "project associates" or "contract attorneys" in order to keep costs down and to cover every demand of the case. NASI suggests that Lead Counsel has somehow misled the Court about this. Dkt. No. 750 at 12-14. In fact, Lead Counsel highlighted the fact that it "sought to minimize expenses by utilizing attorneys billing at lower rates for such tasks as document review." Fee Brief at 16. NASI fails to cite a single case supporting its distinction between project associates, contract attorneys, and associates, and courts that have addressed this issue have rejected assertions similar to that raised by NASI.

---

*Lanni v. NJ*, 259 F.3d 146, 149 (3rd Cir. 2001), citing *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990) ("***current market rate must be used*** in calculating lodestar").

> An attorney, regardless of whether she is an associate . . . or a contract attorney whose job ends upon completion of a particular document review project, is still an attorney. ***It is therefore appropriate to bill a contract attorney's time at market rates and count these time charges toward the lodestar.***

*In re Tyco Int'l, Ltd.,* 535 F. Supp. 2d 249, 272 (D.N.H. 2007).[16] In *Andrews v. Lawrence Livermore Nat'l Sec., LLC*, No. 11-cv-3930-CW, 2012 U.S. Dist. LEXIS 5571, *7 (N.D. Cal. Jan. 18, 2012), Judge Wilken specifically rejected the contention that "an attorney's status as a contract attorney, as opposed to his or her employment as an associate" was relevant to the determination of reasonable hourly rates. The attorneys who performed document review, including attorneys with BFFB as well as counsel working at BR&B, provided significant and important services during the litigation. Ward Decl. at ¶¶ 4-7. NASI's effort to denigrate the efforts of Class Counsel by ignoring the substance of its work on behalf of the Class should be rejected.

Finally, NASI's objection regarding the application of a multiplier to the hourly rates charged for work done by "contract attorneys" finds no support. Dkt. No. 750 at 10-14. As the Court explained in *In re AOL*, 2009 U.S. Dist. LEXIS 124372 at *78:

> . . . the drivers of any multiplier are quality and risk. . . . Because the risk is ultimately financial, counsel's recoupment risk in employing contract attorneys is no less uncertain than that relating to the salaries paid to their regular employees.
>
> The charge of a mark-up on the contract attorney payments does not change the result. Law firms are not eleemosynary institutions. . . . The Court should no more attempt to determine a correct spread between the contract attorney's cost and his or her hourly rate than it should pass judgment on the differential between a regular associate's hourly rate and his or her salary.

Moreover, NASI's effort to cut down the lodestar is pointless because the lodestar cross-check, if undertaken by the Court, will reach a positive conclusion whether or not

---

[16] *See also In re Enron*, 586 F. Supp. 2d at 783-84 (the work of "contract attorneys" is properly billed as a fee rather than a cost); *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 409-10 (D. Conn. 2009) (same); *In re The Mills Corp. Secs. Litig.*, 265 F.R.D. 246, 265 (E.D. Va. 2009) (same); *Takeda Chem. Indus. v. Mylan Labs., Inc.,* No. 03-cv-8253-DLC, 2007 U.S. Dist. LEXIS 19614, *25 (S.D.N.Y. Mar. 21, 2007) (denying objection and noting that "[i]n complex litigation, contract attorneys are routinely used by well-established law firms who supervise their work."); *Morris v. Potter*, No. 06-cv-432-MSK, 2008 U.S. Dist. LEXIS 105409, *19-20 (D. Colo. Dec. 22, 2008) (rejecting an objection to fees asserting that "the associates were, in fact, contract attorneys").

adjustments are made. For example, if the court hypothetically were to cut counsel's lodestar by 10%, that would still suggest that the percentage fee was reasonable, because the implied multiplier would rise only to 1.93. Indeed, if the Court deducted 30% from the lodestar, the implied multiplier would remain well below the level of 2.5, which is not unusual in a case of this nature.[17] NASI cannot make this case resemble *Chiron*, where the case was settled quickly and the implied multiplier for a 25% fee would have been over eight. Through hard and long work, and an excellent result, Class Counsel earned the 33.33% they request and the Class now deserves to reach closure.

## II. CONCLUSION

NASI's objection cannot be squared with case law in the Supreme Court, the Ninth Circuit and this District or the plain language of the PSLRA. In contrast, counsels' request is consistent with case law and local practice. Counsel respectfully request that their request for fees and reimbursement of expenses be granted.

DATED: March 19, 2012

Respectfully submitted,

BONNETT, FAIRBOURN,
FRIEDMAN & BALINT, P.C.
WILLIAM G. FAIRBOURN
FRANCIS J. BALINT, JR.

/s/ FRANCIS J. BALINT, JR.
FRANCIS J. BALINT, JR.

2901 North Central Avenue,
Suite 1000
Phoenix, AZ 85012 .
Telephone: (602) 274-1100

Local Counsel

---

[17] *See, In re Rite Aid*, 396 F.3d 294, 298-99 (9th Cir. 2005) (upholding a fee award reflecting a "fairly common" 4.07 multiplier). *See also, In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d at 273, (rejecting an objection reflecting a 12% change in the estimated lodestar and holding that "[t]his minor change would not make any practical difference in the lodestar cross-check."). In *Tyco*, the court approved a fee of $464 million reflecting a multiplier of 2.697. *Id.* Similarly, in *Enron*, the court awarded fees of $688 million reflecting a multiple of 5.4. 586 F. Supp. 2d at 741.

DATED: March 19, 2012

BARRACK, RODOS & BACINE
STEPHEN R. BASSER
SAMUEL M. WARD

/s/ SAMUEL M. WARD
SAMUEL M. WARD

600 West Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 230-0800

BARRACK, RODOS & BACINE
LEONARD BARRACK
JEFFREY A. BARRACK
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA 19103
Telephone: (215) 963-0600

Lead Counsel for Lead Plaintiff, the Policemen's Annuity and Benefit Fund of Chicago